**FILED**
**Jul 17, 2026**
**09:54 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Markcus Valentine | Docket No.      2025-10-5856 |
| v. | State File No.      52744-2024 |
| Volkswagen of America, Inc., et al. | |
| Appeal from the Court of Workers' Compensation Claims Audrey A. Headrick, Judge | |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employee asserts the trial court issued its expedited hearing order without a complete evidentiary record and that, therefore, the order should be reversed. The employee reported suffering pain in his mid-back and shoulder after pushing a heavy cart at work. He was eventually provided a panel of physicians, from which he selected the physician at the employer's on-site medical clinic. After the employee was seen by several providers at that clinic, a nurse practitioner referred him to an orthopedic physician. The on-site clinic's supervising physician, who had never examined the employee personally, approved the referral, as did the employer. Thereafter, the orthopedic physician determined that the employee had suffered a thoracic strain at work that had resolved. He placed the employee at maximum medical improvement and released him to return to work without restrictions. The employee then sought unauthorized medical care, including a cervical spine surgery, and filed his claim for additional medical and temporary disability benefits from the employer. Following an expedited hearing, the trial court declined to award additional benefits based on the unrebutted causation opinion of the orthopedic physician. The employee has appealed. Having carefully reviewed the record, we affirm the trial court's interlocutory order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Markcus Valentine, employee-appellant, pro se

Jeffrey Powell, Nashville, Tennessee, for the employer-appellee, Volkswagen of America, Inc.

**Factual and Procedural Background**

Markcus Valentine ("Employee") worked for Volkswagen of America, Inc. ("Employer"), at its plant in Harrison, Tennessee.[1] On June 17, 2024, Employee reported pain in his mid-back and shoulder while pushing a heavy cart at work. After reporting the incident to his supervisor, Employee was apparently advised to return to the physician who had previously treated his low back several years earlier. He was then seen at CHI Memorial Family Practice Associates by nurse practitioner ("NP") Cynthia Shaffer. He underwent an MRI on June 19 that revealed "no fractures or subluxations" but "multilevel degenerative changes" in his thoracic spine.[2] On June 24, NP Shaffer assigned restrictions of no lifting over 25 pounds, no pushing, no twisting, limited bending, and limited stooping for six weeks.

Employer provided Employee a panel of physicians approximately one week after the accident, from which he selected Dr. David Tutor at Employer's on-site medical clinic. Although he was evaluated and treated at that clinic on several occasions by various nurse practitioners, he never actually saw Dr. Tutor. Employee was first seen at the on-site clinic on June 25 by NP Gergana Dinina, who diagnosed mid-back pain. He was released to return to restricted duty and was advised to wear a back brace for support. On July 8, NP K. Bowers noted her review of the June 19 thoracic MRI and the diagnosis of multilevel degenerative changes. At that visit, Employee reported using over-the-counter pain medications and wearing an elastic back support. He specifically denied any neck pain at that time. On July 12, Employee returned to the clinic complaining of a new "pinching" sensation between his thoracic spine and left shoulder blade. He was advised by NP Susan Gasque to continue with the same work restrictions and to return to the clinic in one week. On July 18, Employee described his symptoms to NP Dinina as a "constant dull pinch that feels like nerve pain."

Due to Employee's persistent symptoms over the following several weeks, NP Gasque referred Employee to Dr. Rickey Hutcheson, an orthopedic surgeon. On the referral order dated September 4, NP Gasque noted a diagnosis of "thoracic back pain." Employer approved this referral, and Employee first saw Dr. Hutcheson on September 24.

Dr. Hutcheson diagnosed a strain of the thoracic spine and thoracic spondylosis, the latter of which he described as "non work related."[3] He prescribed additional physical therapy and medications and assigned work restrictions of no lifting over ten pounds, no

---

[1] In the record, Employer is alternatively identified as "Volkswagen of America, Inc." and "Volkswagen Group of America, Inc."

[2] The June 19 MRI report is the earliest report from CHI Memorial Family Practice Associates in the record.

[3] Copies of Dr. Hutcheson's reports contained in the record on appeal are, in part, blurry, faint, and difficult to read.

pushing, no pulling, and no carrying. Dr. Hutcheson's next report, the date of which is illegible but appears to be late October, reflects a diagnosis of "strain of muscle and tendon of front wall of thorax." Dr. Hutcheson ordered an updated thoracic MRI to compare to the previous scan. He initially indicated Employee could return to regular duty work, then added an addendum to his report in response to Employee's call on October 25 assigning work restrictions pending receipt of the updated MRI.

Significantly, Dr. Hutcheson also noted that Employee had been in pain management treatment "for the past 3 years" due to his prior lumbar fusion that Employee described as having "failed." Employee reported taking hydrocodone "QID" as prescribed by his pain management provider.[4]

On October 30, 2024, Employee underwent a second thoracic MRI, which revealed "multilevel degenerative disc disease" and "thoracic spondylosis." In his November 1, 2024 report, Dr. Hutcheson opined that "greater [than] 51% of his symptoms [are] associated with his thoracic spondylosis." He placed Employee at maximum medical improvement from his work-related thoracic strain and assigned no permanent medical impairment related to that condition.

Thereafter, Employee sought unauthorized medical care at EMG Chattanooga Bone and Joint Clinic. After reviewing prior diagnostic scans, NP Jacob Faulkner diagnosed "thoracic spondylosis without myelopathy." He opined that the decreased sensation in Employee's right arm was "likely emanating from the cervical spine." As a result, he ordered a cervical MRI, which revealed "moderate to severe right-sided neural foraminal narrowing at C6-7." NP Faulkner diagnosed cervical radiculitis and cervical spondylosis. He recommended an epidural steroid injection ("ESI") at the C7-T1 level of the spine.

In late December 2024, Employee reported "very little instant relief" from the ESI. He described "continued . . . significant burning and aching pain . . . between the shoulder blades." On February 25, 2025, after Employee reported little to no symptom relief from a series of ESIs, NP Faulkner referred Employee to Dr. Prayash Patel, a neurosurgeon, who had performed Employee's previous lumbar surgery. He first evaluated Employee's cervical complaints and MRI results on March 19, 2025, at which time he recommended surgery. Employee underwent cervical spine surgery on April 22, 2025.

Meanwhile, in response to Dr. Hutcheson's opinions, Employee asked for a second opinion examination addressing his work-related injury, which Employer agreed to provide. Of the physicians listed on a panel offered to Employee, only Dr. Jay Jolley would agree to see Employee. In his March 10, 2025 report, Dr. Jolley noted no physical abnormalities but some limitations in range of motion in the cervical spine. However, he

---

[4] The term "QID" as used in the context of prescription medication means "four times per day." *See* https://www.merriam-webster.com/ dictionary/qid (last visited July 16, 2026).

saw "no dysfunction or nerve root irritation" in the cervical spine. There were no range-of-motion limitations in either shoulder. Dr. Jolley agreed with Dr. Hutcheson that Employee had suffered a thoracic sprain with underlying thoracic spondylosis. He noted Employee was continuing to seek pain management treatment for his preexisting lumbar condition. He agreed Employee had reached MMI for his work-related thoracic sprain and had no work restrictions related to that condition.

Following an expedited hearing, the trial court issued an order denying Employee's request for additional medical and disability benefits.[5] Specifically, the court declined to appoint a "neutral" physician to evaluate his work-related injury and declined to award additional temporary disability benefits. Employee has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

## Analysis

In his notice of appeal, Employee alleged the trial court erred in issuing its expedited hearing order "based on an incomplete evidentiary record." Employee asserted he was

---

[5] After the hearing, but before the court issued its expedited hearing order, Employee filed several post-hearing motions, one of which asked the court to "re-open" the proof and another of which objected that the hearing had been conducted despite Employer's purported failure to fully respond to his discovery requests. Those motions were denied, and that order was not appealed.

entitled to "EMR metadata" and an "audit trail" pertinent to various documents.[6] Employee further asserted that he was unable to obtain an expert medical opinion due to "missing records" and that Employer relied upon records it now claims it does not possess.

As an initial matter, we note that Employee did not file a transcript of the expedited hearing or a statement of the evidence certified by the trial court.[7]  Without a transcript or statement of the evidence, our ability to conduct a meaningful appellate review is hindered. *Hayes v. Elmington Prop. Mgmt.*, No. 2018-08-1204, 2019 TN Wrk. Comp. App. Bd. LEXIS 49, at *3 (Tenn. Workers' Comp. App. Bd. Sep. 3, 2019).  Moreover, without a transcript, we must presume the trial court's factual findings are supported by the record. *Hale v. Prime Pkg. & Label, LLC*, No. 2015-06-0150, 2015 TN Wrk. Comp. App. Bd. LEXIS 22, at *13 (Tenn. Workers' Comp. App. Bd. July 16, 2015).

Next, we note that Employee filed various documents after filing his notice of appeal, including a "Supplemental Addendum Regarding Datavant," a "Supplemental Notice of Newly Produced Records, Deficient Production, and Discovery Noncompliance," and a "Supplemental Addendum Regarding Progressive Health Custodial Clarification."[8]  However, it is well established that we cannot "consider on appeal testimony, exhibits, or other materials that were not properly admitted into evidence at the hearing." *Hadzic v. Averitt Express*, No. 2014-02-0064, 2015 TN Wrk. Comp. App. Bd. LEXIS 14, at *13 n.4 (Tenn. Workers' Comp. App. Bd. May 18, 2015).  *See also* Tenn. Comp. R. & Regs. 0800-02-22-.02(2) (2023) ("Documents, testimony, or other evidence not contained in the record on appeal shall not be considered by the appeals board.").  Thus, we cannot consider any documents Employee filed after the issuance of the expedited hearing order that were not timely filed before the hearing, entered into evidence, and considered by the trial court.

We note that an expedited hearing order is interlocutory in nature, meaning that it is not final and is subject to amendment, reversal, or revision at any time prior to the issuance of a final compensation order. *See, e.g.*, *Green v. Rogers Group*, No. 2016-04-0085, 2017 TN Wrk. Comp. App. Bd. LEXIS 34, at *4 (Tenn. Workers' Comp. App. Bd.

---

[6] "EMR metadata" refers to hidden digital data generated when a medical provider prepares an electronic medical record.  *See* https://records-express.blogs.archives.gov/2016/11/21/metadata-in-electronic-records-management/ (last visited July 16, 2026).

[7] After the filing of his notice of appeal, Employee filed a document entitled "Statement of the Evidence." This document purported to summarize the proceedings at the expedited hearing and the testimony of the witnesses.  However, Tenn. Comp. R. and Regs. 0800-02-22-.05(1) describes the process for presenting a statement of the evidence and mandates that any such statement be "certified by the trial judge as a fair and accurate summary of the testimony presented."  No such certification occurred in the present case, and, thus, we cannot consider Employee's purported "Statement of the Evidence."

[8] According to its website, Datavant is a company that "securely connect[s] . . . health data across the healthcare ecosystem."  *See* https://www.datavant.com/ (last visited July 16, 2026).

May 22, 2017); Tenn. R. Civ. P. 54.02(1) ("[A]ny order . . . that adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims or parties, and the order . . . is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties."). If Employee wishes to present additional evidence for the court's consideration not previously presented to the court, he must file a new request for expedited hearing and seek to admit such evidence.

In addition, we note that Employee also did not file a brief on appeal. As stated by the Tennessee Supreme Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Id.* It is not our role to search the record for possible errors or to formulate a party's legal arguments where that party has provided no meaningful argument or authority to support its position. *Cosey v. Jarden Corp.*, No. 2017-01-0053, 2019 TN Wrk. Comp. App. Bd. LEXIS 3, at *8 (Tenn. Workers' Comp. App. Bd. Jan. 15, 2019). Here, although Employee asserts in his notice of appeal that the trial court conducted a hearing based upon an incomplete record, he has provided no legal argument or explanation as to how the record was incomplete or how the trial court erred in considering it.

We note that Employee is self-represented in this appeal, as he was in the trial court. Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). As explained by the Tennessee Court of Appeals:

> [C]ourts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. . . . Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903-04 (Tenn. Ct. App. 2003) (internal citations omitted). Here, as noted above, Employee did not provide a transcript of the hearing or a statement of the evidence certified by the trial court and, thus, the full extent of the evidence submitted to the court is unknown. Moreover, he did not file a brief, so we have no way of knowing his legal argument on appeal. In short, the preponderance of the evidence at this stage of the litigation supports the trial court's decision.

Finally, we caution Employee that, whether the content of his filings was generated by him individually or with the assistance of artificial intelligence, he is responsible for the accuracy of all such content and the legal basis for the filings. Rule 11 of the Tennessee

6

Rules of Civil Procedure places a burden on all litigants, whether represented by attorneys or not, to certify the accuracy of all factual assertions "to the best of the person's knowledge, information, and belief" that are "formed after an inquiry reasonable under the circumstances." Tenn. R. Civ. P. 11.02. It further prohibits parties from filing any document "for any improper purpose, such as to . . . cause unnecessary delay or needless increase in the cost of litigation." Tenn. R. Civ. P. 11.02(1). All filings must seek relief "warranted by existing law or by a nonfrivolous argument for the extension . . . of existing law." Tenn. R. Civ. P. 11.02(2). Rule 11 also authorizes a court to impose sanctions on litigants who fail to abide by these mandates. Tenn. R. Civ. P. 11.03.

## Conclusion

For the foregoing reasons, we affirm the trial court's order in all respects and remand the case. Costs on appeal were waived.